**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **ADAIR ASSET MANAGEMENT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:09CV352** |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA, et. al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the court on the motion (Filing No. 16) of defendant, the United States of America, by and for the U.S. Fish and Wildlife Service (USFWS) [1], to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The defendant filed an index of exhibits (Filing No. 17) and brief (Filing No. 18) in support of its motion. The plaintiff did not file a brief in response.

This action was initially filed by the plaintiff in the District Court of Washington County, Nebraska. **See** Filing No. 1 - Notice of Removal. According to the allegations in the complaint, the plaintiff holds a Certificate of Tax Sale (2006033) issued by the Treasurer of Washington County, for certain property in Washington County of which the defendant, the United States, is the record owner. **Id.** Ex. A - Complaint. The property at issue is:

> The Southwest Quarter of the Northwest Quarter and the Southwest Quarter of Section 17, Township 17 North, Range 13 East, 6th P.M., Washington County, Nebraska,

and title in the subject property is vested in the United States Government and its assigns, Grantee, c/o U.S. Fish and Wildlife Service. Filing No. 1, p. 2. According to the complaint, the property was subject to taxes and special assessments. **Id.** Ex. A - Complaint**.** The taxes were levied and assessed against the property, but remained unpaid, thereby constituting a lien on the real estate. **Id.** The plaintiff purchased the Certificate of Tax Sale for the property and now holds the lien for the subsequent general taxes assessed.

---

[1]    Collectively referred herein as the "Defendant" or "United States."

**Id.**  In its complaint, the plaintiff sought a decree that the taxes due would be held as liens upon the property, and that upon establishment of such a lien, the property could be sold at public sale.  **Id.**

On October 2, 2009, the defendant removed the case to the United States District Court for the District of Nebraska.  Filing No. 1.  The defendant set forth the following grounds for removal: 28 U.S.C. § 1441(a), which authorizes removal of any civil action in a State court of which district courts of the United States have original jurisdiction (here, for actions taken under color of office); 28 U.S.C. § 1442(a)(1), which authorizes removal of a civil action against an officer of the United States or any agency thereof for any act or an account of any right, title or authority claimed under any act of Congress for the collection of revenue; and 28 U.S.C. § 1346(f), which confers exclusive original jurisdiction to the district courts in civil actions in which the United States claims an interest in real property.  **Id.** at 2.  Further, by answering the complaint, the defendant asserted the following defenses: The court's lack of subject matter jurisdiction; failure to state a claim for which relief can be granted; tax certificates are invalid on this property against the United States under state or federal law; and the subject property can not be foreclosed upon.  **See** Filing No. 9 - Answer, p. 1-3.

On January 8, 2010, in accordance with 28 U.S.C. § 636(c), upon consent of the parties, the case was assigned to the undersigned United States magistrate judge to conduct any and all further proceedings in the case, including the trial, and order the entry of a final judgment.  **See** Filing No. 15.

On February 10, 2010, the defendant moved the court to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.  **See** Filing No. 16. According to the defendant's brief in support of the motion to dismiss, Washington County does not have the authority to tax or otherwise assess property owned by the United States.  Therefore, the tax certificates issued by Washington County and purchased by the plaintiff are void under state and federal law, and cannot be valid liens against the property of the United States.  **See** Filing No. 18, p. 1

## BACKGROUND

By Declaration submitted in support of defendant's motion to dismiss, Patrick G. Carroll (Mr. Carroll), of the U.S. Fish and Wildlife Services, made the following representations about the facts of this case, as he is familiar with the real estate at issue in this lawsuit.  **See** Filing No. 17-1.  According to Mr. Carroll, the United States acquired fee title to the property by two deeds - a Trustee's Deed dated August 3, 2000, and a Warranty Deed dated August 15, 2000.  **Id.** at 2.  The property was purchased from two private parties that jointly held an undivided one-half interest in the property.  **Id.**  The United States Congress authorized the funds to purchase the property through the Fish and Wildlife Act of 1956 (16 U.S.C. §§ 742a-754j).  **Id.**  On August 16, 2000, the United States recorded both deeds in the Washington County real estate records.  **Id.**  at 3.  Such property eventually became part of the Boyer Chute National Wildlife Refuge (NWR).  **Id.**  The Boyer Chute NWR is part of the National Wildlife Refuge System, and was established on September 30, 1997, to restore essential fish and wildlife habitat along the Missouri River.  **Id.**

Since the Federal Government does not pay taxes on its land holdings, Congress passed the Refuge Revenue Sharing Act (16 U.S.C. §715s) in 1935.  **Id.**  at 4.  Under the Act, the USFWS makes revenue sharing payments to counties which contain lands they administer.  **Id.**  The counties then distribute the payments to local government units which have incurred the loss or reduction of real property tax revenues by reason of the existence of such USFWS lands.  **Id.**; **See** 16 U.S.C. § 715s(c)(5)(A).  The Department of the Interior paid $45,577.00 to Washington County for its share of revenues for the Boyer Chute NWR in 2007, and $41,373.00 in 2008.  **Id.** at 4.

In February, 2002, the Washington County Treasurer notified the USFWS that it was liable for payment of drainage assessments.  **Id.**  In 2003, USFWS received real property tax statements from Washington County for property taxes and assessments proposed by the Fort Calhoun Drainage District, a local entity established under Nebraska law.  **Id.**  A USFWS supervisor sent a letter to the Washington County Treasurer stating it is uniformly held that the land at issue is not liable for special assessments for local improvements in the absence of an act of Congress.  **Id.**  at 5.  Further, in 2005, another USFWS manager

sent a letter to the Fort Calhoun Drainage District requesting the drainage district Board pass a resolution acknowledging USFWS is not liable for drainage assessments in the Boyer Chute NWR. **Id.** In March, 2006, a USFWS manager again wrote to the Fort Calhoun Drainage District regarding the assessments and other matters. **Id.** In February, 2007, an attorney in the U.S. Department of the Interior's Field Solicitor Office wrote to several Washington County officials regarding a public notice dated February 13, 2007, which advertised a proposed tax sale of the Boyer Chute NWR. **Id.** at 6. The attorney noted that special assessments may not be assessed against property owned by the United States, and asked that the assessments of Washington County against the United States be voided. **Id.**

On January 31, 2008, Mr. Carroll wrote to the current Washington County Treasurer regarding the notices of delinquent property taxes again noting the United States is a tax exempt entity, and accordingly, Washington County has no legal authority to levy taxes against the property. **Id.** at 6-7. Further informal attempts to resolve the assessment issue ensued. On or about January 30, 2009, the Washington County Treasurer issued additional real property tax delinquency notices to the USFWS on the Boyer Chute NWR. **Id.** at 7. The notices indicated property taxes were delinquent from all or some of the years 2001 through 2006. **Id.** The plaintiff eventually purchased the Tax Certificates and now seeks to redeem them and/or auction the property in satisfaction of the lien. **See** Filing No. 1 - Notice Of Removal - Ex. 1 Complaint, p. 8.

## ANALYSIS

Under Fed.R.Civ.P. 12(b)(1), a party may assert lack of subject matter jurisdiction as a defense to a claim for relief. According to Fed.R.Civ.P 12(h)(3), a federal court must dismiss an action if it determines at any time it lacks subject matter jurisdiction. *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003). For the court to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion

could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction. *Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824, 829 (8th Cir. 2003). A district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1).  In a factual attack on the jurisdictional allegations of the complaint,  the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.  *Id.*  The plaintiff has the burden of proving that jurisdiction does in fact exist. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

The United States Code § 1331 provides district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.  Absent authority from Congress, the United States is immune from civil suits by private parties.  It is elementary that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) **citing** *United States v. Sherwood*, 312 U. S. 584, 586 (1941). A waiver of sovereign immunity "cannot be implied, but must be unequivocally expressed." **Id. citing** *United States v. King*, 395 U. S. 1, 4 (1969).   "District courts lack subject-matter jurisdiction over claims against the Government to which Congress has not consented." *Entenmann's, Inc. v. United States*, 1998 WL 1284191 (D. Neb. 1998) **citing** *Miller v. Tony & Susan Alamo Foundation*, 134 F.3d 910, 916 (8th Cir. 1998).

In 1886, in *Van Brocklin v.  Anderson*, 117 U.S. 151, the Supreme Court considered whether land owned by the United States could be subject to a lien for state, county and city taxes.  The court stated:

> Whether the property of one of the states of the Union is taxable under the laws of that state depends upon the intention of the state as manifested by those laws. But whether the property of the United States shall be taxed under the laws of a state depends upon the will of its owner, the United States, and *no state can tax the property of the United States without their consent* . . . .
>
> *        *        *

While the power of taxation is one of vital importance, retained by the states, not abridged by the grant of a similar power to the government of the union, but to be concurrently exercised by the two governments, yet even this *power of a state is subordinate to, and may be controlled by, the Constitution of the United States*. That Constitution and the laws made in pursuance thereof are supreme. They control the constitutions and laws of the respective states, and cannot be controlled by them.

\*      \*      \*

*Upon the admission of every other state into the union, the exemption of the lands of the United States from taxation by the state has been declared* -- sometimes in the form of a condition imposed by Congress and sometimes in the form of a proviso to a proposition to grant the state certain lands or money, offered for its acceptance or rejection -- in phrases somewhat varying, but substantially similar to one another.

*Id.* at 175, 155, and 164 (1886) (emphases added).  The court in *Van Brocklin* held that assessments made against the land were unlawfully assessed because they were made while the land was owned by the United States.  And, those assessments being unlawful, created no lien upon the land.  **Id.** at 180.  Nebraska statues are additionally clear that the State and local governments lack authority to tax federal property.  Accordingly, "Taxation of property owned by the United States government . . . is governed by federal law.  Generally, this property is exempt unless a specific act of Congress subjects it to the State's taxing authority."  Nebraska Admin. Code § 40-003.02.  This rule was upheld in ***Easley v. City of Lincoln***, 213 Neb. 450, which held property owned by the federal government is not subject to special assessments, even when the property benefits from local improvements.  *Id.* at 451-53, 330 N.W.2d 130 (1983).

The defendant in this matter is the United States government, which acquired the subject property as part of the National Wildlife Refuge System.  Here, the defendant argues the plaintiff lacks subject matter jurisdiction because Washington County does not have authority to tax or otherwise assess property owned by the United States.  See Filing No. 18 - Brief in Support of Motion, p. 1.  The defendant argues the tax certificates issued by the Washington County Treasurer and purchased by the plaintiff are void under state

6

and federal law.  **Id.**   According to the defendant, the tax certificates could not, therefore, be valid liens against the property of the United States.  **Id.**   Congress specifically provided in the Refuge Revenue Sharing Act that the federal government shall pay counties a share of revenue gained from the administration of certain properties, and counties should distribute the funds to the local governments which incurred a loss from real property tax revenues.  There is no Congressional or other approval which would permit the tax or drainage assessments imposed by Washington County and the Fort Calhoun Drainage District to be paid by the United States[2].  Based on the foregoing, the court finds this matter should be dismissed for lack of subject matter jurisdiction.

**IT IS ORDERED:**

Defendant's Motion to Dismiss (Filing No. 16) is granted.

DATED this 22nd day of March, 2010.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

[2] However, as noted in the defendant's brief, the plaintiff is not without recourse in pursuing the funds it paid to Washington County for the tax certificates (**See** Neb.  Rev.  Stat. § 77-187 providing for the county to reimburse for principal, interests and costs relating to property which was wrongly sold).

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.